USCA1 Opinion

 

 January 13, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 92-1952 MICHAEL PAGANO, Plaintiff, Appellant, v. ANTHONY M. FRANK, POSTMASTER GENERAL, ETC., Defendant, Appellee. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Robert E. Keeton, U.S. District Judge] ___________________ _________________________ Before Selya, Circuit Judge, _____________ Coffin, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________ _________________________ Norman Jackman, with whom Martha M. Wishart and Jackman & ______________ __________________ __________ Roth were on brief, for appellant. ____ David G. Karro, Attorney, Office of Labor Law, U. S. Postal _______________ Service, with whom A. John Pappalardo, United States Attorney, ___________________ and Annette Forde, Assistant United States Attorney, were on _____________ brief, for appellee. _________________________ _________________________ SELYA, Circuit Judge. The United States Postal Service SELYA, Circuit Judge. _____________ prides itself on surmounting obstacles that nature places in its path.1 In this bitterly contested case, plaintiff-appellant Michael Pagano, a veteran postal worker, complains that, whatever success the Service may have encountered in its struggle with the elements, it has been unable to surmount a man-made obstacle: prejudice in the workplace. The district court ruled in favor of the defendant. Finding appellant's arguments to be unpersuasive, we affirm. I. BACKGROUND I. BACKGROUND The Lynnfield Post Office hired appellant as a part- time mail carrier in 1973. He became a full-time employee two years later, working primarily as a clerk at a branch office. In 1983, appellant became a dispatcher at the main post office under the direct supervision of James Walsh. Walsh and Pagano did not enjoy a cordial working relationship a situation that perhaps stemmed from the latter's propensity for unauthorized absences. When Walsh was promoted to postmaster in mid-1984, Paul Hentschel became Pagano's supervisor. On December 2, 1984, Hentschel sent appellant an admonitory letter regarding frequent tardiness and excessive use of sick leave. A second warning letter, issued exactly one year later, cited continuing instances ____________________ 1An inscription on the exterior of the main New York City post office, often thought to be the Postal Service's motto, reads: "Neither snow, nor rain, nor heat, nor gloom of night stays these couriers from their appointed rounds." (adapted from VIII Herodotus, Histories 98). _________ 2 of unpunctuality and sick leave abuses during a two-month period ending December 2, 1985. Notwithstanding these admonitions, appellant persisted in his moratory ways. Hentschel suspended him for seven days in January (later reduced to five) and fourteen days in March (later reduced to seven). Seeing no improvement, Hentschel issued a so- called "notice of removal" on July 15, 1986 (later withdrawn), and reissued it on October 22, 1986. During the ensuing grievance proceedings, Walsh overrode Hentschel's action and authorized a "last chance" agreement. Although the agreement contained a promise that appellant would report for work regularly and punctually, this covenant was honored mainly in the breach: appellant was absent or late nineteen times during the four-month period ending March 23, 1987. Hentschel discharged appellant in May of that year, citing his "lack of dependability in reporting and not being available for duty." Three months after his termination, appellant filed a formal administrative complaint with the Postal Service's equal employment opportunity office, alleging that he was dismissed because of his employer's animus against persons of Italian origin.2 For the next three years, appellant vigorously pursued ____________________ 2Appellant originally claimed that a second discriminatory animus, arising out of his role in the investigation of a sexual harassment complaint, contributed to his difficulties. He has, however, abandoned this theory on appeal. Accordingly, we pass over it. See United States v. Slade, ___ F.2d ___, ___ n.3 (1st ___ _____________ _____ Cir. 1992) [No. 92-1176, slip op. at 6 n.3] (reiterating the general rule that "theories neither briefed nor argued on appeal are deemed to have been waived"). 3 his case on the administrative level. Receiving no satisfaction, he brought suit against the Postmaster General in the United States District Court for the District of Massachusetts. Appellant docketed his complaint in the district court on August 7, 1990. On February 19, 1992, a magistrate judge denied his motion for leave to file an amended complaint. Several months thereafter, the district court granted the defendant's motion for summary judgment. This appeal ensued. II. THE NEED TO OBJECT TO A MAGISTRATE'S ORDER II. THE NEED TO OBJECT TO A MAGISTRATE'S ORDER As a preliminary matter, appellant contends that the district court erred in denying his motion to add counts alleging wrongful discharge and breach of contract. The facts are as follows. Appellant's motion to amend his complaint was filed on January 10, 1992. The district judge referred the motion to a magistrate judge who denied it on grounds of futility, ruling that the additional claims were both preempted by Title VII and that, moreover, the wrongful discharge claim failed to comport with the Federal Tort Claims Act. Appellant took no further action. Because appellant failed to object to the magistrate's order within the prescribed ten-day period, see Fed. R. Civ. P. ___ 72(a), we cannot consider this assignment of error.3 ____________________ 3We analyze this point under Fed. R. Civ. P. 72(a) partially because appellant, in post-argument briefing before us, explicitly invited that characterization. However, even if we viewed the magistrate's denial of the motion to amend as implicating 28 U.S.C. 636(b)(1)(B) and Fed. R. Civ. P. 72(b) rather than 28 U.S.C. 636(b)(1)(A) and Rule 72(a), the result that we reach would not be affected. See Park Motor Mart, Inc. ___ _____________________ v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980) (holding _______________ that, in respect to a magistrate's recommended disposition under 4 Under ordinary circumstances a motion to amend a complaint is "a pretrial matter not dispositive of a claim or defense of a party" within the purview of Fed. R. Civ. P. 72(a). See Walker v. Union Carbide Corp., 630 F. Supp. 275, 277 (D. Me. ___ ______ ___________________ 1986); see also 28 U.S.C. 636(b)(1)(A) (providing that a ___ ____ district judge "may designate a magistrate to hear and determine any pretrial matter," with certain enumerated exceptions not relevant here). A party displeased by a magistrate's order on a nondispositive motion must serve and file objections to the order within ten days. See Fed. R. Civ. P. 72(a); see generally 28 ___ ___ _________ U.S.C. 636(d) (congressional grant of rulemaking power). If the aggrieved party preserves his rights in this fashion, the district judge can set aside the magistrate's ruling if he finds it to be "clearly erroneous or contrary to law." 28 U.S.C. 636(b)(1)(A); Fed. R. Civ. P. 72(a). If, however, the aggrieved party sits idly by and fails to object within the prescribed period, he "may not thereafter assign as error a defect in the magistrate's order . . . ." Id.; see also Rule 2(b), Rules for ___ ___ ____ U.S. Magistrates in the United States District Court for the District of Massachusetts (implementing 28 U.S.C. 636(b)(1)(A), (d) and Civil Rule 72 (a)). In this instance, Pagano did not object to the ____________________ section 636(b)(1)(B), "a party 'may' file objections within ten days or he may not, as he chooses, but he 'shall' do so if he wishes further consideration"); accord Davet v. Maccarone, 973 ______ _____ _________ F.2d 22, 30-31 (1st Cir. 1992); Templeman v. Chris Craft Corp., _________ __________________ 770 F.2d 245, 247 (1st Cir.), cert. denied, 474 U.S. 1021 (1985); _____ ______ Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983). _____ _________ 5 magistrate's denial of the motion to amend. That ends the matter. Congress granted the courts of appeals jurisdiction to hear appeals "from all final decisions of the district courts of the United States." 28 U.S.C. 1291. We have held that for a magistrate's decision to be "final" within the meaning of the statute it "must have been reviewed by the district court, which retains ultimate decision-making power." United States v. Ecker, _____________ _____ 923 F.2d 7, 8 (1st Cir. 1991) (quoting Siers v. Morrash, 700 F.2d _____ _______ 113, 115 (3d Cir. 1983)).4 In other words, when, as now, a litigant could have tested a magistrate's ruling by bringing it before the district judge, but failed to do so within the allotted ten-day period, he cannot later leapfrog the trial court and appeal the ruling directly to the court of appeals. See ___ Unauthorized Practice of Law Comm. v. Gordon, ___ F.2d ___, ___ ___________________________________ ______ (1st Cir. 1992) (per curiam) [No.92-1710, slip op. at 7-8]; McKeever v. Block, 932 F.2d 795, 799 (9th Cir. 1991); Singletary ________ _____ __________ v. B.R.X., Inc., 828 F.2d 1135, 1137 (5th Cir. 1987); Siers, 700 ____________ _____ F.2d at 116; see also Ecker, 923 F.2d at 9 (holding that the ___ ____ _____ court of appeals cannot undertake direct review of a magistrate's order on a nondispositive pretrial motion in a criminal case); United States v. Renfro, 620 F.2d 497, 500 (5th Cir.) (same), _____________ ______ cert. denied, 449 U.S. 921 (1980). ____ ______ Because appellant took no steps to have the district ____________________ 4Of course, when magistrates sit as de facto district judges __ _____ by consent of the litigants under 28 U.S.C. 636(c), they can enter final, appealable judgments. See 28 U.S.C. 636(c)(3). ___ However, section 636(c) has no applicability in the instant case. 6 judge review the magistrate's denial of the motion to amend, he is precluded from contesting the merits of that order in the present proceeding. See Rittenhouse v. Mabry, 832 F.2d 1380, ___ ___________ _____ 1387 (5th Cir. 1987) (refusing to entertain a plaintiff's challenge to a magistrate's denial of his motion to amend his complaint because "no appeal therefrom to the district court was ever taken or attempted and the district court did not in any way review or confirm th[e] order"). III. THE PROPRIETY OF SUMMARY JUDGMENT III. THE PROPRIETY OF SUMMARY JUDGMENT We divide our examination of the summary judgment entered below into two segments. We begin by outlining the Rule 56 standard and then proceed to the underlying Title VII claim. A. The Summary Judgment Standard. A. The Summary Judgment Standard. _____________________________ Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Where, as in this case, the defendant has invoked Rule 56 and asserted a lack of supporting evidence, the plaintiff must establish the existence of a triable issue which is both genuine and material to his claim. See Anderson v. Liberty Lobby, Inc., ___ ________ ___________________ 477 U.S. 242, 247-48 (1986). "In this context, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party [and] 'material' means that the fact is one that might affect the 7 outcome of the suit under the governing law." United States v. _____________ One Parcel of Real Property, Etc. (Great Harbor Neck, New _________________________________________________________________ Shoreham, R.I.), 960 F.2d 200, 204 (1st Cir. 1992) (citations and _______________ internal quotation marks omitted). On issues where the nonmovant bears the ultimate burden of proof at trial, he may not defeat a motion for summary judgment by relying upon evidence that is "merely colorable" or "not significantly probative." Anderson, 477 U.S. at 249-50. To ________ the contrary, the nonmovant must "present definite, competent evidence to rebut the motion." Mesnick v. General Elec. Co., 950 _______ _________________ F.2d 816, 822 (1st Cir. 1991), cert. denied, 112 S. Ct. 2965 _____ ______ (1992). Even when elusive concepts like motive or intent are in play, "summary judgment may be appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. R.J. ____________ ____ Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). ____________________ We afford plenary review to a district court's grant of summary judgment. In the course thereof, we must read the record in the light most amicable to the party contesting summary judgment, indulging all reasonable inferences in that party's favor. See, e.g., Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st ___ ____ ___________ _____ Cir. 1990). B. The Title VII Claim. B. The Title VII Claim. ___________________ Title VII renders it unlawful for an employer to "discharge any individual . . . because of such individual's race, color, religion, sex, or national origin . . . ." 42 8 U.S.C. 2000e-2(a)(1). To prevail on a Title VII claim, a plaintiff must prove that the defendant discriminated against him for a proscribed reason. See Cumpiano v. Banco Santander Puerto ___ ________ ______________________ Rico, 902 F.2d 148, 153 (1st Cir. 1990). Because appellant ____ produced no direct evidence of discriminatory intent, we must initially analyze his claim under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 _________________________ _____ (1973).5 McDonnell Douglas requires, first, that the claimant __________________ state a prima facie case. This showing transfers the burden of production, requiring the employer to articulate (but not necessarily prove) some legitimate, nondiscriminatory reason justifying the adverse employment action. Cumpiano, 902 F.2d at ________ 153. Satisfying this burden of production effectively dissolves the inference of discrimination arising from the plaintiff's prima facie case.6 See White v. Vathally, 732 F.2d 1037, 1040 ___ _____ ________ (1st ____________________ 5In general, the McDonnell Douglas model operates in the _________________ same way for Title VII cases as for cases brought under the federal Age Discrimination in Employment Act (ADEA), 29 U.S.C. 621-634 (1988). See Villanueva v. Wellesley College, 930 F.2d ___ __________ _________________ 124, 127 n.2 (1st Cir.) cert. denied, 112 S. Ct. 181 (1991); Loeb _____ ______ ____ v. Textron, Inc., 600 F.2d 1003, 1015 (1st Cir. 1979). Hence, we _____________ cite interchangeably to Title VII and ADEA decisions in the succedent analysis. 6Even though the McDonnell Douglas inference vanishes, the _________________ evidence submitted in support of the prima facie case remains under consideration. See Mesnick, 950 F.2d at 825 n.6 ___ _______ (explaining that, although the burden-shifting framework becomes inconsequential at this point, the district court, faced with a Rule 56 motion, "must still examine the evidence that the parties adduced in proceeding under the framework"). 9 Cir.), cert. denied, 469 U.S. 933 (1984). Once the parties reach _____ ______ this stage, therefore, the plaintiff, if he is to defeat a properly documented motion for summary judgment, "must offer some minimally sufficient evidence, direct or indirect, both of pretext and of the employer's discriminatory animus." Mesnick, _______ 950 F.2d at 825; accord Villanueva v. Wellesley College, 930 F.2d ______ __________ _________________ 124, 127-28 (1st Cir.), cert. denied, 112 S. Ct. 181 (1991); _____ ______ Lipsett v. University of Puerto Rico, 864 F.2d 881, 895 (1st Cir. _______ _________________________ 1988). In this case, the district court apparently assumed that appellant stated a prima facie case7 and that the employer articulated a facially valid, nondiscriminatory reason (chronic absenteeism and tardiness) for the dismissal. From that starting point, the court ruled against appellant on two bases. First, the court determined that appellant failed to submit evidence of pretext. Second, the court found that "there is no evidence in the record . . . that would justify even a circumstantial inference that plaintiff was dismissed because of his Italian heritage." Either conclusion would have warranted brevis disposition. Having scrutinized the record, we are persuaded that both are supportable. ____________________ 7In employment termination cases, a prima facie case may be established by demonstrating that "(1) the plaintiff was within a protected class; (2) she was qualified for, and adequately performed, her job; (3) she was nevertheless dismissed; and (4) after her departure, the employer sought someone of roughly equivalent qualifications to perform substantially the same work." Cumpiano, 902 F.2d at 153. Following the district ________ court's lead, we also assume arguendo that appellant stated a ________ prima facie case. 10 1. Pretext. Appellant's effort to establish pretext 1. Pretext. _______ takes an unexpected twist. The Postal Service's stated reason for cashiering Pagano focused on his rotten attendance record and unremitting lack of punctuality. Usually, a Title VII plaintiff seeks to show pretext by attacking the factual premise on which the employer's professed reason rests. Here, however, appellant concedes the truth of the Service's factual predicate he was, by his own admission, often absent and frequently late but says that the proffered reason was nonetheless pretextual because the employer's attendance policy was not applied to other, similarly situated, non-Italian employees in the same way. This uncommon claim hinges on appellant's attempt to compare his work record and treatment with the work record and treatment of one Patrick Rafferty, a co-employee of Irish descent. In appellant's view, Rafferty committed equivalent sins but received much milder punishment. The court below jettisoned this claim, finding that Rafferty's case was not a fair congener. We agree. In contending that he and Rafferty were "similarly situated," appellant limits his analysis to the number of times the two men were late during a finite period. Yet, appellant had a substantially longer and more varied history of attendance problems than did Rafferty and appellant, unlike Rafferty, failed to mend his ways following receipt of formal warnings. Appellant also racked up many more violations of the Postal Service's attendance policy than did Rafferty when items such as sick time, 11 absences without leave, and the like are taken into account.8 In short, the record shows beyond hope of contradiction that the two men were not similarly situated vis-a-vis overall attendance and that Rafferty, like Pagano, was disciplined for provable infractions at a level corresponding to the infractions' severity. In the absence of any other evidence that the Postal Service applied the attendance rules unevenly, the district court did not err in holding that there was no genuine issue of material fact on the question of pretext.9 See Oliver v. ___ ______ Digital Equip. Corp., 846 F.2d 103, 109 (1st Cir. 1988). ____________________ 2. Discriminatory Animus. Appellant likewise failed 2. Discriminatory Animus. _____________________ to adduce any evidence tending to prove defendant's supposed discriminatory intent. Appellant produced no evidence that Hentschel, the official responsible for monitoring the attendance policy and initiating disciplinary proceedings, harbored an anti-Italian animus. Rather, he attempted to establish animus by showing that Walsh, the Lynnfield postmaster, nursed a grudge ____________________ 8For example, in the seventeen months prior to appellant's dismissal, he was involved in fifty-three separate occurrences that called the attendance rules into question. Rafferty was involved in only fourteen such instances during the same period. 9Relatedly, appellant asserts that there is a fact dispute about whether the Postal Service consistently recorded every instance of employee lateness or absence. Even if such a question exists, however, it is not material to this case. Appellant adduced no proof that the Service either failed to record transgressions based upon employees' national origin or placed ersatz infractions on his work record. Indeed, his evidence suggests that the Service may have been somewhat charitable in not recording all violations of the attendance rules. If this is so, appellant, as a habitual latecomer, likely benefitted from the employer's laxity. 12 against persons of Italian descent. The sum total of appellant's evidence consists of three statements attributed to Walsh. When reacting to news that he had become appellant's immediate superior, Walsh allegedly remarked, "Good, now we can fire you." On another occasion, Walsh allegedly told a co-worker that he hoped appellant would quit. Finally, upon hearing an employee of Italian lineagecough, Walsh reputedly said, "I hope he chokes." This evidence is manifestly insufficient to create a trialworthy issue regarding the existence of a statutorily proscribed animus. To be sure, the attributed remarks are concededly coarse but there is nothing about them which suggests to an objectively reasonable observer that they constituted expressions of discrimination based on national origin. Sporadic instances of rude behavior, without more, do not comprise competent proof of nationality-based discrimination. See, e.g., Mesnick, 950 F.2d at 826; Medina-Munoz, 896 F.2d at 9- ___ ____ _______ ____________ 10; Robinson v. Montgomery Ward & Co., 823 F.2d 793, 797 (4th ________ ______________________ Cir. 1987), cert. denied, 484 U.S. 1042 (1988); Clark v. _____ ______ _____ Atchison, Topeka & Santa Fe Ry. Co., 731 F.2d 698, 702 (10th Cir. ___________________________________ 1984). We hold, therefore, that this smattering of offhand comments, spread over a fourteen-year period, fails as a matter of law to show anti-Italian animus.10 ____________________ 10In view of this ruling, we need not reach, and, thus, take no view anent, the district court's alternative holding that Walsh's comments, even if probative of ethnic hostility, were inconsequential absent evidence that he had some input into, or impact upon, Hentschel's decision to end appellant's employment. 13 IV. CONCLUSION IV. CONCLUSION We need go no further. We are without jurisdiction to consider appellant's belated challenge to the magistrate's denial of his motion to file an amended complaint. And, given the lack of a triable issue of fact regarding either pretext or animus, we conclude, without serious question, that the lower court appropriately entered judgment in defendant's favor. See Oliver, ___ ______ 846 F.2d at 109 (holding that summary judgment is proper in a Title VII case where plaintiff's opposition, at bottom, rests solely upon "unsupported allegations and speculation"). Affirmed. Affirmed. _________ ____________________ See, e.g., Medina-Munoz, 896 F.2d at 10 ("The biases of one who ___ ____ ____________ neither makes nor influences the challenged personnel decision are not probative in an employment discrimination case."). 14