**TABER PARTNERS I, Plaintiff,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, INC., Defendant.**

**TABER PARTNERS I, Plaintiff and Counterdefendant,**

v.

**MERIT BUILDERS, INC. Defendant, Counterclaimant & Third-party Plaintiff,**

v.

**VICTOR TORRES & ASSOCIATES, INC. and Desarrollos Metropolitanos, Inc., Third-party Defendants.**

Civ. Nos. 91–1220 (JP), 91–1211 (JP).

United States District Court, D. Puerto Rico.

Feb. 3, 1995.

Rubén T. Nigaglioni, Ledesma, Palou & Miranda, Hato Rey, PR, for plaintiff.

Nachman & Fernández Seín, Santurce, PR, for defendant.

Edilberto Berríos Pérez, Hato Rey, PR, for Víctor Torres.

Humberto Guzmán Rodríguez, Fiddler, González & Rodríguez, San Juan, PR, for Desarrollos.

## OPINION & ORDER

PIERAS, District Judge.

The Court has before it defendant's two motions for partial summary judgment (docket Nos. 121, 122), plaintiff's oppositions (docket Nos. 131, 136), and the respective supplements to their motions.[1] The case at bar is a diversity action filed by Taber Partners I ("Taber") against Merit Builders, Inc. ("Merit")[2] for the alleged breach of three construction contracts and the corresponding damages. The three contracts in dispute deal with the renovation and expansion of the Ambassador Plaza Hotel & Casino ("Ambassador") located in San Juan, Puerto Rico. Merit argues in both motions that the Puerto Rico Supreme Court decision in *Constructora Bauzá v. García López*, 91 J.T.S. 99 (1991), mandates judgment in its favor as to all claims in the complaint dealing with apparent construction defects and damages for delays in the project. Taber argues that the principles established in *Constructora Bauzá* are inapplicable to the case at bar because the three construction contracts specifically set out the duties and responsibilities of the parties regarding apparent defects and substantial completion. Substantially for the same reasons provided by Taber, and as explained below, Merit's motions for partial summary judgment are hereby DENIED.

## I. UNCONTESTED FACTS

For purposes of deciding the motions for partial summary judgment, and taking into consideration the statements submitted by Merit and Taber as to uncontested facts, a careful review of the record reveals the following pertinent uncontested facts:

1) On January 18, 1989, Taber and Merit entered into a cost plus construction contract for the renovation and expansion of the Ambassador. Taber is the owner of the Ambassador, while Merit is a construction company which served as the general contractor for the hotel's renovation and expansion project under the contract. On July 6, 1989, Taber and Merit entered into a second contract under a fixed price and for the same project as the prior contract. These two contracts are collectively known by the parties as the "Tower Contract." The Tower Contract, among other things, called for the construction of a ninety-one (91) all suite tower, a parking garage, and a casino shell.

2) On February 9, 1990, Taber and Merit entered into a "Specialty Contract," which encompassed the necessary finish work for the casino, casino lounges, hotel lobby, and the Chinese and Italian restaurants.

3) On December 1, 1990, Taber and Merit entered into a third agreement, known as the "Interim Agreement." In the Interim Agreement the parties set out in writing the manner in which they would resolve certain differences in order to complete the work under the Tower Contract as soon as possible. Before signing the Interim Agreement, Taber had refused to pay Merit's Application for Payment No. 15 and No. 16 claiming that Merit had failed to conduct its work in an acceptable workmanlike manner and failed to achieve timely Substantial Completion of the Tower Contract. In light of Taber's refusal to make the requested payments, Merit had filed a demand for arbitration and declaratory relief with the Caribbean Regional Office of the American Arbitration Association. In its demand for arbitration, Merit sought to obtain a declaration that would allow it to suspend performance under the Tower Con-

---

1. In addition to the docket numbers listed, the Opinion and Order addresses the arguments and issues presented in the following motions: docket Nos. 132, 133, 134, 135, 143, 144, 152, 251, 260, 263, and 267.

2. Taber also sued Merit Builders, S.E., which is a special partnership organized under the laws of Puerto Rico and is a successor entity to Merit Builders, Inc. Both entities will be collectively referred to in this Opinion and Order as "Merit."

tract until Taber paid the requested amounts for work already performed. By signing the Interim Agreement, Taber agreed to pay Merit the outstanding applications for payment (No. 15 and 16), and Merit agreed to file a joint stipulation to stay the arbitration proceedings until the date of Substantial Completion for the Tower Contract. Among other things, the parties also agreed that:

a. As of December 1, 1990, Merit had not achieved Substantial Completion of the Tower Contract.

b. The Substantial Completion date for the Tower Contract, as extended by the appropriate change orders, was October 17, 1990.

4) Both the Tower Contract and the Specialty Contract were prepared on Document A101 of the American Institute of Architects ("AIA"). This contract incorporated in its entirety AIA's General Conditions for Construction Contracts (AIA Document A201). The contracts between Taber and Merit also included two sets of specially tailored conditions, and a group of professionally drawn specifications and plans. AIA's general conditions included in the Tower and Specialty contracts provide in part the following:

4.3 SUPERVISION AND CONSTRUCTION PROCEDURES

4.3.3 The Contractor shall not be relieved from his obligations to perform the Work in accordance with the Contract Documents either by the activities or duties of the Architect in his administration of the Contract, or by inspections, tests or approvals required or performed under Paragraph 7.7 by persons other than the Contractor.

7.6 RIGHTS AND REMEDIES

7.6.2 No action or failure to act by the Owner, Architect or Contractor shall constitute a waiver of any right or duty afforded any of them under the Contract, nor shall any such action or failure to act constitute an approval of or acquiescence in any breach thereunder, except as may be specifically agreed in writing.

9.4 CERTIFICATES FOR PAYMENT

9.4.2 However, by issuing a Certificate for Payment, the Architect shall not thereby be deemed to represent that he has made exhaustive or continuous on-site inspections to check the quality or quantity of the Work or that he has reviewed the construction means, methods, techniques, sequences or procedures, or that he has made any examination to ascertain how or for what purpose the Contractor has used the moneys previously paid on account of the Contract Sum.

9.5 PROGRESS PAYMENTS

9.5.5 No Certificate for a progress payment, nor any progress payment, nor any partial or entire use or occupancy of the Project by the Owner, shall constitute an acceptance of any Work not in accordance with the Contract Documents.

9.8 SUBSTANTIAL COMPLETION

9.8.1 When the Architect on the basis of an inspection determines that the Work or designated portion thereof is substantially complete, he will then prepare a Certificate of Substantial Completion which shall establish the Date of Substantial Completion, shall state the responsibilities of the Owner and the Contractor for security, maintenance, heat, utilities, damage to the Work, and insurance, and shall fix the time within which the Contractor shall complete the items listed therein.

5) Change order No. 248, which reduced the sum owed under the Tower and Specialty contracts by fifty eight thousand eight hundred and thirty four dollars ($58,834.00), was dated December 3, 1990, and signed by Merit's representative on December 5, 1990. The effect of the change order was to transfer the responsibility for certain millwork from Merit to Taber.

II. THE RULE 56 STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides for the entry of summary judgment in a case where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Pagano v. Frank,* 983 F.2d 343, 347 (1st Cir.1993); *Brennan v. Hendrigan,* 888 F.2d 189, 191 (1st Cir.1989); *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 894 (1st Cir.1988). Summary judgment is appropriate where, after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, there is not the slightest doubt as to whether a genuine issue of material fact exists. *Kennedy v. Josephthal & Co.,* 814 F.2d 798, 804 (1st Cir.1987); *Peckham v. Ronrico Corp.,* 171 F.2d 653 (1st Cir.1948). A "genuine" issue is one that is dispositive, and which consequently must be decided at trial. *Mack v. Great Atlantic and Pacific Tea Co.,* 871 F.2d 179, 181 (1st Cir. 1989); *Anderson v. Liberty Lobby,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). A material fact, which is defined by the substantive law, is one which affects the outcome of the suit and which must be resolved before attending to related legal issues. *Mack,* 871 F.2d at 181.

The party filing a motion for summary judgment bears the initial burden of proof to show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Thereafter, the burden shifts to the non-movant to provide the Court, through the filing of supporting affidavits or otherwise, with "some indication that he can produce the quantum of evidence [necessary] to enable him to reach the jury with his claim." *Hahn v. Sargent,* 523 F.2d 461, 468 (1st Cir.1975); *see also Brennan,* 888 F.2d at 191. The non-movant cannot rest upon mere allegations or denial of the pleadings. Fed. R.Civ.P. 56(e). Indeed, the non-movant must affirmatively show that "sufficient evidence supporting the claimed factual dispute [exists] to require a jury or judge to resolve the parties' differing versions of truth at trial." *First National Bank v. Cities Service Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968). On issues where the non-movant bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion. *See Anderson,*

477 U.S. at 256–57, 106 S.Ct. at 2514–15; *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir.1990). "Even when elusive concepts like motive or intent are in play, summary judgment may be appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Pagano,* 983 F.2d at 347 (quoting *Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990).

## III. THE CONSTRUCTORA BAUZA DECISION

The *Constructora Bauzá* decision is the centerpiece upon which the motions for partial summary judgment filed by Merit stand or fall. Merit argues that the decision, regardless of the many genuine issues of material fact present in this case, entitles it to summary judgment as a matter of law on the claims for apparent defects and the damage claims associated with a belated Substantial Completion date. An overview of the facts in the *Constructora Bauzá* decision is therefore necessary to understand Merit's arguments.

Dr. García López and Constructora Bauzá entered into a contract for the construction of Dr. García's home. The contract, embodied in a two page document, specified a fixed price for the construction and set a completion date of four months. Furthermore, the contract specified that the project would be supervised by an architect chosen by Dr. García. Under the contract, Constructora Bauzá would submit weekly requests for payments, and Dr. García would pay these requests within three days after the applications for payment were made. For every weekly payment, Dr. García had the right to retain five percent (5%) of the payment as security for any possible future defects in construction. After the project was completed and inspected, Dr. García would then return the money kept as security for the project. No other rights or obligations were specified in the contract.

Three months after construction began, Dr. García ordered the project stopped to analyze the seriousness of some apparent defects in construction. Dr. García hired various experts to complete the examination

of the project, who found that the structure was not built according to the plan and that it suffered from plumbness and squareness problems. In light of the fact that the structure would have to be demolished in its entirety to correct those defects, Dr. García decided to continue with the project.

By the time Dr. García decided to continue with the project, the original timeframe for completion of the project had already passed. Therefore, and in order to avoid future problems, the parties mutually agreed to amend the original contract. In the new agreement the parties decided to: 1) draft a new construction plan utilizing the existing structure "as built," 2) set March 3, 1985, as the new substantial completion date, 3) delete some items from the original contract, and 4) reduce the price of the contract by eighteen thousand eight hundred dollars ($18,800.00). Finally, the new contract specified that Constructora Bauzá would receive a two hundred dollars ($200.00) bonus for every day the project was delivered ahead of schedule, or a two hundred dollars fine ($200.00) for every day the project was delivered late. When construction continued, Dr. García would not pay Constructora Bauzá's applications for payment until after the work was inspected by two engineers hired by Dr. García.

In the middle of March, 1985, Constructora Bauzá notified Dr. García that it had substantially completed the project. Dr. García's expert engineer rejected Constructora Bauzá's assertion, and submitted a list of alleged deficiencies in the project as well as items to be completed. Since the parties were unable to resolve their differences, Dr. García filed an action in Puerto Rico Superior Court for breach of contract and the corresponding damages. He alleged in the complaint that Constructora Bauzá had not completed the project in a workmanlike manner, thereby reducing the value of his home by about sixty thousand dollars ($60,000.00). Furthermore, Dr. García alleged that Constructora Bauzá owed him eight thousand eight hundred dollars ($8,800.00) in fines for the belated completion of the project. The trial court determined that: 1) Constructora Bauzá never finished the project, 2) the project suffered from various apparent defects

which would require forty one thousand five hundred twenty dollars ($41,520.00) worth of repairs, and 3) Constructora Bauzá owed Dr. García seven thousand twenty seven dollars and twenty cents ($7,027.20) in fines for the late completion of the project. Constructora Bauzá appealed the judgment.

The Supreme Court of Puerto Rico reversed the superior court. First, the court found that when Dr. García amended the original contract, a novation of the old contract occurred. As evidence of this fact, the Supreme Court pointed out that the price of the contract had been reduced and a new plan had been drafted taking into account the structure "as built." Furthermore, a new date for completion of the project was set. Therefore, the court decided that Dr. García had accepted all existing apparent defects at the time he amended the contract. The court also found that Dr. García had no cause of action for apparent defects made after the amendment of the contract. The court reasoned that since the doctor had two experts examine the construction work before each and every payment was made, the doctor could not claim damages for apparent defects. He had accepted the work "as is" when he paid for it. Finally, the court held that in light of the fact that Dr. García had paid over ninety percent (90%) of the total amount of the contract, the contract for all practical purposes was substantially complete. Therefore, the fines imposed by the superior court for late completion were also reversed.

## IV. MERIT'S ARGUMENTS IN SUPPORT OF SUMMARY JUDGMENT

The arguments presented by Merit in both motions for summary judgment are straightforward. Merit believes that *Constructora Bauzá* established three main precepts. First, a contractor is not liable for apparent defects once an owner has approved and paid for the work performed. Second, if a novation of the original contract occurs, a contractor cannot be found liable for any defects or delays in the work completed prior to the novation. And finally, once an owner has paid over ninety percent (90%) of the contract price, a project must be considered substantially completed. A brief examination of Merit's theories is in order.

Taber hired Víctor Torres & Associates ("VTA") to serve as the project's architect. Part of VTA's duties under the agreement with Taber included inspections of the project to ascertain the progress made and the quality of the work. Under the Tower Contract Merit submitted progressive applications for payment to the project's architect, VTA, who if satisfied that the work had been completed, would then have to issue a certificate of payment for Taber's signature and payment. Merit therefore argues that as in *Constructora Bauzá*, VTA served as Taber's field expert which certified, before each payment was made, the quality of the work performed. Due to the fact that neither VTA or Taber complained of apparent defects before numerous payments were made, Merit argues that Taber cannot claim damages as to apparent defects for work inspected and paid.

Merit also argues that the Interim Agreement signed by the parties on December 1, 1990, novated the original Tower Contract. To support its theory, Merit argues that the Interim Agreement involved substantial variations of the principal conditions of the Tower Contract. As evidence of the alleged substantial variations, Merit points out that the contract price was reduced by change order 248 and that certain finishing work which Merit was supposed to do was eliminated. Since the original contract was novated, therefore, as in *Constructora Bauzá*, Merit argues that Taber accepted all work "as is" performed before the Interim Agreement.

Finally, Merit argues that pursuant to the criteria established in *Constructora Bauzá*, its work was substantially complete as of October 30, 1990. Merit bases its argument on the fact that on October 30, 1990, it submitted to VTA application for payment No. 16. When Taber paid application No. 16 in December of 1990, after signing the Interim Agreement, ninety one percent (91%) of the total contract price had been paid. Therefore, Merit concludes that since by its own calculations the contract due date was November 2, 1990, it complied with the contract by substantially completing the work by October 30, 1990. Since the contract was substantially completed in time, Taber cannot request damages for delays in the completion of the project.

## V. DISCUSSION

Merit's reliance on the *Constructora Bauzá* decision is misplaced, and in this particular instance completely ineffective.

First, the legal precedents established in *Constructora Bauzá* are inapplicable to the case at bar. The Tower and Specialty contracts between Taber and Merit included very specific language dealing with the acceptance of work performed by the contractor and the legal consequences of making progress payments under the contract. For example, Section 4.3.3 of the Contract established that the contractor would not be relieved from his obligations under the contract by the activities or duties of the project's architect. Section 7.6.2 of the Contract established that no action or failure to act by the owner, architect, or contractor shall constitute a waiver of any rights or duties established under the contract. The Contract even specified in Section 9.4.2 that the issuance of a certificate of payment, or payment itself under the certificate, does not represent that the architect has made exhaustive or continuous on-site inspections to check the quality or quantity of the work performed by the contractor. Most importantly, the Contract expressly provides in Section 9.5.5 that no certificate for progress payment or even the use or occupancy of the project by the owner shall constitute an acceptance of any work not in accordance with the contract.

■ Merit is not relieved of liability for apparent defects under the Tower or Specialty contracts simply by receiving payment for performed work. The two page contract in *Constructora Bauzá* did not include any of the provisions which the Tower and Specialty contracts specifically included. Furthermore, as the Supreme Court of Puerto Rico observed in *Constructora Bauzá*, a contract, absent any inherent vices of defects, is the law between the parties and must be followed. *Constructora Bauzá*, 91 J.T.S. at 9076 (citing 31 L.P.R.A. § 1994; *Cervecería Corona v. Commonwealth Ins. Co.*, 115 D.P.R. 345 (1984)). Therefore, regardless of what the Supreme Court of Puerto Rico decided in a specific contractual dispute, the provisions of the Tower and Specialty contracts established the law of the case at bar. Under those provisions as explained above, the fact that Taber paid for work performed

by Merit and certified by VTA does not preclude Taber from presenting its claims for apparent defects.

■ Merit's claim that the original Tower Contract was novated by the Interim Agreement is also devoid of any factual or legal support. A careful evaluation of the Interim Agreement reveals, as the name suggests, that the parties entered into a separate and third agreement in order to postpone the resolution of certain differences. By agreeing to postpone these differences the parties could concentrate on finishing the Tower Contract as soon as possible. Page eight, paragraph nine of the Interim Agreement, specifies that both Taber and Merit shall conduct themselves in strict accordance with the terms of the contract. If the intention of the parties by entering into the Interim Agreement had been to novate the prior contract, they certainly would not have specified that the terms of the Tower Contract must be followed. Page seven, paragraph two of the Interim Agreement, specifies that all future payments made by Taber to Merit shall be made according to the guidelines established in the Tower Contract. Certainly, if the Tower Contract was being abrogated, the language explaining future payments would have been different.

Nowhere in the Interim Agreement does it specify that the parties are rescinding or abrogating prior contracts. Again, as the Puerto Rico Supreme Court explained in *Constructora Bauzá*, novation is never presumed in contract interpretation, and if presented for adjudication, novation must be established without room for doubt from the particular facts of the case. *Constructora Bauzá*, 91 J.T.S. at 9078 (citing *Warner Lambert v. Tribunal Superior*, 101 D.P.R. 378, 389, 390–91 (1973)). Merit has tried to argue that change order 248 demonstrates novation of the Tower Contract since, as in *Constructora Bauzá*, the contract price was slightly reduced. The problem with Merit's argument is that the parties signed change order 248 after they entered into the Interim Agreement. Furthermore, unlike in *Constructora Bauzá*, neither the plans nor any other major duty or obligation under the Tower Contract was changed by the Interim Agreement. Other than Merit's blanket assertions, the Court finds no conclusive evidence which would demonstrate without room for doubt that Taber and Merit intended to rescind the Tower Contract when they entered into the Interim Agreement. Therefore, Merit's argument that Taber is precluded from presenting its claims for apparent defects because the Tower Contract was novated is not grounded in either fact or law.

■ Finally, Merit has tried to argue that Taber is not entitled to claim that it has suffered damages due to the delays associated with the completion of the Tower Contract. Merit's argument is twofold. First, Merit claims that it substantially completed the Tower Contract before the due date. This argument assumes that Merit's calculation as to the appropriate due date is correct and uncontested. As a matter of fact, a genuine issue of material fact exists as to the date the Tower Contract was substantially completed as well as the date that the Tower Contract should have been finished. Therefore, Merit's first argument as to Substantial Completion is simply flawed for purposes of a motion for summary judgment.

Second, Merit has also tried to argue that since the Puerto Rico Supreme Court found that the contract in *Constructora Bauzá* was substantially completed when ninety percent (90%) of the total amount of the contract was paid, this Court should also find that Merit substantially completed the contract as of October 30, 1990, when it submitted to VTA an application for payment which, when paid, exceeded ninety percent (90%) of the total amount to be paid under the Tower Contract. As an initial matter, the Court notes that Merit is estopped from making this argument as both Merit and Taber agreed in the Interim Agreement, signed December 1, 1990, that the Tower Contract was not substantially completed. However, regardless of this fact, Merit's argument fails. The substantial completion date as established under the Tower Contract and the change orders approved by the parties was October 17, 1990, not October 30, 1990. Therefore, even if Merit achieved substantial completion by October 30, 1990, due to the fact that it was paid over ninety percent (90%) of the total amount of the contract, it still would have substantially completed the work *after* October 17, 1990. Merit's argument on substantial completion must also be denied.

88

## VI. CONCLUSION

In light of the provisions included in the contracts between Taber and Merit, the decision of the Puerto Rico Supreme Court in *Constructora Bauzá v. García López,* 91 J.T.S. 99 (1991), is not applicable to the case at bar. The fact that Taber made progressive payments to Merit under the contract does not relieve Merit of liability for apparent construction defects. Also, no evidence exists to suggest that the Interim Agreement signed on December 1, 1990, novated the Tower Contract. Finally, genuine issues of material fact remain as to when the Tower Contract was substantially completed as well as to when it should have been completed. The *Constructora Bauzá* decision does not resolve the issue of substantial completion under the facts of this case.

Therefore, Merit's two motions for partial summary judgment are hereby **DENIED**.

IT IS SO ORDERED.