**Juan GOTAY SANCHEZ,
et al., Plaintiffs,**

v.

**Hon. Miguel PEREIRA,
et al., Defendants**

No. 03–1195(JP).

United States District Court,
D. Puerto Rico.

Sept. 29, 2004.

Luzgarda Vázquez de Santiago, Esq., Shirley M. Monge–García, Esq., San Juan, PR, for Plaintiff.

María Villares–Señeriz, Esq., Department of Justice, Commonwealth of Puerto Rico, San Juan, PR, for Defendant.

### OPINION AND ORDER

PIERAS, Senior District Judge.

## I. INTRODUCTION

Before the Court is Defendants' "Motion for Summary Judgment and Memorandum of Law in Support Thereof" (**docket Nos. 34 and 35**) and Plaintiffs' opposition thereto (docket Nos. 41 and 42). For the reasons herein stated, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Summary Judgment.

## II. LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate where, after drawing all reasonable inferences in favor of the non-moving party, there is no genuine issue of material fact for trial. *See Pagano v. Frank*, 983 F.2d 343, 347 (1st Cir.1993). A fact is material if it might affect the outcome of the case. *Mack v. Great Atl. and Pac. Tea Co., Inc.*, 871 F.2d 179, 181 (1st Cir.1989). An issue is "genuine" if sufficient evidence exists to permit a reasonable trier of fact to resolve the issue in the non-moving party's favor. *See Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 24 (1st Cir.1989).

The party filing a motion for summary judgment bears the initial burden of proof to show "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party to show affirmatively, through the filing of supporting affidavits or otherwise, that a genuine issue exists for trial. *See Goldman v. First National Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir.1993). In discharging this burden, the non-moving party may not rest upon mere allegations or denials of the pleadings. See Fed. R.Civ.P. 56(e). On issues where the non-moving party bears the ultimate burden of proof, it must present definite, competent evidence to rebut the evidence put forth by the moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–257, 106 S.Ct. 2505, 2514–2515, 91 L.Ed.2d 202 (1986). Indeed, summary judgment may be appropriate "... where elusive concepts such as motive or intent are at issue ... if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Woods v. Friction Materials, Inc.*, 30 F.3d 255, 259 (1st Cir.1994).

## III. FINDINGS OF FACT

After thoroughly evaluating the facts presented by the parties and the record as a whole, the Court makes the following findings of fact.

1. At the time of the events that gave rise to this cause of action, Juan Gotay–Sánchez ("Plaintiff Gotay" or "Gotay Sr.") was of legal age, married to Fiordaliza Rustand–King, retired and living in Fajardo, Puerto Rico.

2. Plaintiff Juan Gotay–Rustand (" Gotay Jr.") is of legal age and single.

3. Plaintiff Gotay Jr. works as croupier for the Conquistador Hotel Casino.

4. Plaintiff Gotay Jr. is the only son of Plaintiff Gotay and Plaintiff Rustand and still lives at his parents' home.

5. Plaintiffs are all citizens of the United States and residents of the Commonwealth of Puerto Rico.

6. On March 1, 2002, Co–Defendants Francisco Rodríguez Legrand, police badge number 19827, Enrique Félix Morey, badge number 27621, Benja-

mín Ramos González, badge number 29062 and Deborah Orellana Pagán, badge number 19238, were officers of the Puerto Rico Police Department assigned to the Fajardo area.

7. The aforementioned officers were in the line of duty at the time of the events that gave rise to this cause of action.

8. On that date, at about 10:00 p.m., Plaintiff Gotay Sr. was driving back to his home from Las Croabas in the urban area of the Municipality of Fajardo.

9. Co–Defendants Orellana Pagán and Ramos González were doing their preventive round and saw Plaintiff Gotay's car.

10. Plaintiff Gotay had been drinking that evening.

11. The officers turned on the lights above the patrol car and honked the horn to try to stop him.

12. Since the siren was not working, the officers alternated between the short headlights and the long headlights and aligned the patrol car next to Plaintiff Gotay's car.

13. The officers pointed a flashlight at him and signaled Plaintiff Gotay to stop the car.

14. Plaintiff Gotay ignored this request.

15. After several attempts to stop the car, Officer Orellana Pagán used the police radio to request the assistance of any patrol car in the vicinity of Union Street in order to stop a green Ford Taurus (Plaintiff Gotay's car).

16. A patrol car with Co–Defendants Félix Morey and Rodríguez Legrand was near the area, and they arrived at Union Street from the direction opposite to that of Plaintiff Gotay's car.

17. The officers intercepted Plaintiff Gotay's car and stopped it near the Veve Calzada Public School.

18. Co–Defendant Rodríguez Legrand intervened with Plaintiff Gotay and used the nightstick to give him a blow on his leg.

19. Co–Defendant Félix was somehow injured by Plaintiff Gotay as a result of the altercation.

20. Plaintiff Gotay was escorted to co-Defendants Orellana Pagán and Ramos González's patrol car in order to take him to the police station.

21. The paramedics confirmed that Plaintiff Gotay had a broken tibia.

22. Plaintiff Gotay was taken to the Hospital for treatment.

23. The officers gave Plaintiff Gotay a traffic ticket for violation to Article 10.22 of the traffic code, failure to wear a seatbelt.

24. The officers in charge consulted with District Attorney Francisco Rosario Pérez to determine if they should file charges against Plaintiff Gotay.

25. District Attorney Francisco Rosario Pérez instructed the officers to give Plaintiff a citation or summons to appear before him on March 4, 2002 in order to hear the proof and make a final determination on whether to file charges against Plaintiff for assault and resisting arrest.

26. No criminal charges were ever brought against Plaintiff Gotay.

27. Plaintiff Gotay was not taken into custody nor was he ever detained awaiting trial.

28. No charges were ever brought against any of the police officers involved in his arrest.

29. Although Plaintiff Gotay filed an administrative complaint against Co–de-

fendants Félix Morey and Ramos González, it was ultimately dismissed.

30. Co–Defendant Víctor Rivera González was not the Superintendent of the Police Department of Puerto Rico at the time the alleged events took place.

31. Co–Defendant Rivera González was appointed to the position of Superintendent on December 19, 2002, and therefore has no personal involvement in the facts alleged in the Complaint.

32. Plaintiff Gotay passed away on April 17, 2003 from natural causes relating to his heart as stated in his death certificate.

33. Plaintiff Gotay had a criminal record for violation to the Puerto Rico weapons law.

34. Plaintiff Gotay requested reconsideration (revision) of the traffic citation given to him on March 1, 2002, but the same was denied.

35. The personnel records of co-Defendants Rodríguez Legrand, Félix Morey, Ramos or Orellana do not evidence any complaints that have prevailed against any of them for civil rights violations against citizens.

36. Defendant Rodríguez Legrand used his nightstick against Plaintiff on the night in question.

## IV. CONCLUSIONS OF LAW

After analyzing the previous facts, the parties' briefs, and the record as a whole, the Court makes the following conclusions of law:

At the outset, the Court clarifies that although Plaintiffs filed an opposition to Defendants' Motion for Summary Judgment, they failed to oppose the arguments raised by Defendants regarding the claims raised pursuant to the First, Fifth, Eighth, and Fourteenth Amendments, malicious prosecution, false arrest/imprisonment, Eleventh Amendment immunity, the allegations against co-Defendant Víctor Rivera, and supervisory liability. The Court therefore addresses the issue of having disposed of Defendants' Motion for Summary Judgment without an opposition to these claims.

It is true that when a court rules on a motion for summary judgment without the benefit of an opposition, the court risks accepting a skewed version of the factual circumstances giving rise to the controversy. However, it is also clear that this risk is minimized by certain procedural safeguards. For example, even though a party failing to oppose a motion for summary judgment waives the right to controvert any facts asserted by the moving party, as in this instance, this does not mean that the Court must automatically grant the Motion for Summary Judgment pending before it. *Jaroma v. Massey,* 873 F.2d 17, 21 (1st Cir.1989).

Rule 56(e) of the Federal Rules of Civil Procedure is clear when it states that summary judgment shall only be entered "if appropriate." Fed.R.Civ.P. 56(e). Consequently, "[w]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented." *Stepanischen v. Merchants Despatch Transp. Corp.,* 722 F.2d 922, 929 (1st Cir. 1983) (*quoting Thornton v. Evans,* 692 F.2d 1064, 1075 (7th Cir.1982)). Put another way, even when ruling on an unopposed motion for summary judgment, the Court must peruse the record with a very critical eye and determine whether the moving party has met its burden of demonstrating undisputed facts that will entitle it to judgment as a matter of law. *Corretjer Farinacci v. Picayo,* 149 F.R.D. 435 (D.Puerto Rico 1993). Only when the Court properly discharges this duty does it

activate the procedural safeguards which reduce the risk that the Court's legal conclusions will rest on unsound factual foundations. Additionally, the Court makes clear that this opinion, which resulted in the partial denial of Defendants' motion for summary judgment, was not aided by the quality of Plaintiffs' brief to the Court. With this in mind, the Court now turns to the issues before it.

### A. *The widow and son's § 1983 claims*

Defendants first allege that under the case of *González Rodríguez v. Alvarado,* 134 F.Supp.2d 451 (D.Puerto Rico 2001), a deceased person's heirs cannot inherit his or her § 1983 cause of action, and that therefore, Plaintiffs' claims under this section cannot lie. Defendants' reliance on this case, however, is misplaced and the same is easily distinguishable.

█ The *González* case centered around whether heirs to a wrongful death or a survival action could inherit the deceased person's § 1983 claims. In other words, the controversy revolved around whether the heirs of an inmate *who had died as a result of Defendant's alleged negligent actions, could inherit their § 1983 claims.* That is not the case here, where the death certificate states that Plaintiff Gotay died over a year after the incidents that gave rise to this cause of action, and of causes unrelated to the claims asserted herein. In the present case, Gotay's heirs, who are also Defendants since the inception of the case, simply inherit his § 1983 claim, as they would any other claim. *See Complaint* at 1. Therefore, Defendants' petition for summary judgment on this issue is **DENIED.**

### B. *Eleventh Amendment Immunity*

█ The Court turns next to the Eleventh Amendment[1] issue, since the same goes to whether the district court has jurisdiction over Defendants in their official capacity. *See Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984). Under the Eleventh Amendment, all states are immune from suits by citizens in federal court, unless the state waives said immunity or Congress overrides it as it may do in limited situations. *See Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997); and *Seminole Tribe v. Florida,* 517 U.S. 44, 57–68, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). When an action is brought against a public agency or institution that is not the state, the analysis must focus on whether the agency "is to be treated as an arm of the state partaking of the state's Eleventh Amendment immunity, or is instead to be treated as a municipal corporation or other political subdivision to which the Eleventh Amendment does not extend". *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977). If, after this analysis, the agency or department that is the named defendant is deemed an arm of the state, then the action will be barred by the Eleventh Amendment. This jurisdictional bar applies irrespective of the nature of the relief sought in the complaint. *See Pennhurst,* 465 U.S. at 100, 104 S.Ct. 900.

█ In terms of the Commonwealth of Puerto Rico, it has been clearly established

---

1. The Eleventh Amendment provides:
   "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or pros-

   ecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."
   U.S. Const. amend. XI.

that, for Eleventh Amendment purposes, the Commonwealth is treated as if it were a state; consequently, the Eleventh Amendment bars any suit brought against it. *Metcalf & Eddy, Inc., v. Puerto Rico Aqueduct and Sewer Auth.,* 991 F.2d 935 (1st Cir.1993); *Ramírez v. Puerto Rico Fire Serv.,* 715 F.2d 694, 697 (1st Cir. 1983).

■ The main thrust of the Eleventh Amendment is to minimize federal courts' involvement in disbursal of state monies. The Supreme Court has stated that "when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit". *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945); *see also Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963) (recognizing "that a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain"). It has been established that if a state has a legal obligation to satisfy judgments against an institution out of public coffers, the institution is protected from federal adjudication by the Eleventh Amendment. *See Quern v. Jordan,* 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979); *Reyes v. Supervisor of DEA,* 834 F.2d 1093, 1097–98 (1st Cir. 1987).

■ However, in terms of suits against an employee in his or her official capacity, as in the case at bar, it has been well established that an official capacity suit against an officer is treated as a suit against the governmental entity of which the officer is an agent. *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985); *Monell v. New York City Dept. of Soc. Servs.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 n. 55, 436 U.S. 658, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978); *Brandon v. Holt,* 469 U.S. 464, 471, 105 S.Ct. 873, 878, 83 L.Ed.2d 878 (1985) ("a judgment against a public servant 'in his official capacity imposes liability on the entity that he represents....'"). Therefore, it is clear that a suit against an employee in his official capacity cannot lead to liability against the governmental entity.

■■ In terms of the Puerto Rico Police Department, it has been held time and again that it is an arm of the state, and therefore, immune from suit under the Eleventh Amendment. *See Febus–Rodríguez v. Betancourt–Lebrón,* 14 F.3d 87 (1st Cir.1994); *Reyes v. Supervisor of Drug Enforcement Admin.,* 834 F.2d 1093, 1097–98 (1st Cir.1987) *López-Rosario v. Police Dept.,* 126 F.Supp.2d 167 (D.Puerto Rico 2000) (Pieras, J.); *Torres v. United States,* 24 F.Supp.2d 181 (D.Puerto Rico 1998); *Suárez Cestero v. Pagán Rosa,* 996 F.Supp. 133, 142–43 (D.Puerto Rico 1998) (Pieras, J.). Therefore, a suit against any of the Defendants herein, in their official capacities, cannot lie, and the Court **GRANTS** their motion for summary judgment on this claim. Consequently, all claims against all Defendants, in their official capacities, are hereby **DISMISSED WITH PREJUDICE.**

### C. *First Amendment claims for freedom of speech*

It has been held that "absolute First Amendment protection is not accorded to any grievance a public employee files against an employer, without regard to content". *See Tang v. State of R.I., Dept. of Elderly Affairs,* 163 F.3d 7, 11–12 (1st Cir.1998). In assessing whether Plaintiff's speech implicates public concern, the Court must analyze "the content, form, and context of [the speech], as revealed by the whole record." *Connick,* 461 U.S. at

147–48, 103 S.Ct. at 1684. The Court's analysis regarding this issue, however, is brief, since no claim, besides a one paragraph allegation in the Complaint, has been raised by Plaintiffs regarding any First Amendment violations. *See Complaint*, at 11.

■ Having examined Plaintiffs' one-sentence allegation regarding a First Amendment violation, the Court can only conclude that they fail at the first step. Not only has Plaintiff not opposed Defendants' arguments on this issue, but the record is simply devoid of any factual basis to sustain Plaintiffs' claims. As is known, in summary judgment, a plaintiff must bring more to the table than mere allegations; he must bring forth the specific facts, with specific citations to the record to prove the veracity of those facts. *See Goldman v. First National Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir.1993). Plaintiffs have failed to do this regarding this claim, and therefore, co-Defendants' request for summary judgment on this issue is hereby **GRANTED**. Plaintiff's First Amendment claims regarding free speech against all co-Defendants are hereby **DISMISSED WITH PREJUDICE**.

D. *Claims brought under the Fifth, Eight, and Fourteenth Amendments, malicious prosecution, false arrest/imprisonment, and supervisory liability*

■ Plaintiffs claims under the Fifth, Eighth, and Fourteenth Amendments, malicious prosecution, false arrest/imprisonment and supervisory liability fare no better. Besides the general allegations made in the Complaint, there is no single statement of uncontested or contested material fact which addresses these allegations. As discussed above, the Court needs to see specific facts, with specific citations to the record, to support any allegations Plain-tiffs make. At this point, Plaintiffs' allegations are all that sustain their cause of action, and they are just that—allegations—that are standing on thin air without any evidentiary support whatsoever, and which cannot be considered "facts" for purposes of summary judgment under any circumstances. *See Anderson*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2515, 91 L.Ed.2d 202; *see also Triangle Trading Co., Inc. v. Robroy Inds., Inc.*, 200 F.3d 1 (1st Cir. 1999) (conclusory allegations, improbable inferences, and unsupported speculation are insufficient to establish a genuine dispute of fact). Defendants' arguments regarding these issues are therefore uncontested, and finding no issue of material fact regarding the aforementioned claims, Plaintiffs' claims must therefore be dismissed. Perhaps if Plaintiffs' opposition to Defendants' motion to dismiss would have discussed these issues, the Court's opinion would be different. Having therefore found no contested issues of material fact regarding these claims, the Court therefore **DISMISSES** the claims brought under the Fifth, Eight, and Fourteenth Amendments, malicious prosecution, false arrest/imprisonment and supervisory liability, **WITH PREJUDICE**.

E. *The allegations against co-Defendant Víctor Rivera González*

■ Plaintiff agrees with Defendants' argument that former Police Superintendent Víctor Rivera González is not responsible in his personal capacity. *See Initial Scheduling Conference Order*. The facts that give rise to this cause of action occurred in March 2001. Co–Defendant Rivera González was appointed to said position in December 2002, where he remained until December 2003. Since he was not Police Superintendent at the time the events that gave rise to this cause of action occurred, no responsibility can therefore

lie, and the Court also **DISMISSES** the claims brought against him in his personal capacity **WITH PREJUDICE.**

### F. *Fourth Amendment*

The Court now reaches the crux of this case—and indeed, one of Plaintiffs' two remaining claims—the alleged Fourth Amendment rights violation.

■ Regarding this issue, the Court finds that there are genuine issues of material fact which prevent it from granting summary disposition of this case on this issue only, and which are only proper for a jury to decide. The Court finds that genuine issues of material fact exist regarding the incident in question, specifically, regarding whether or not Plaintiff was attempting to flee the scene at the time of the incident; regarding how many times Plaintiff was hit with the nightstick (baton) by the officers; whether or not Plaintiff had an aggressive attitude; whether or not Plaintiff fell to the floor when hit by the officers, and whether or not Plaintiff was hit by one or several officers. Therefore, the Court cannot enter into the jury's realm to determine these issues and therefore dispose of this case at this time. The Court consequently **DENIES** Defendants' Motion for summary judgment on this issue at this time. The Court reminds the parties that this limited issue to be decided by the jury at trial will be decided against Defendants in their individual capacity only, having previously **DISMISSED WITH PREJUDICE** the claims against all of them in their official capacity due to Eleventh Amendment Immunity.

### G. *Qualified Immunity*

■ Drawing on Supreme Court precedent, the Court employs a three-part test when determining if a public official is entitled to qualified immunity. When presented with a motion for summary judg-ment based on qualified immunity, the Court must engage in a three part analysis: 1) the first inquiry must be whether a constitutional right would have been violated on the facts alleged; 2) the determination of whether that right was so "clearly established" as to alert a reasonable officer to its constitutional parameters; and 3) the ultimate determination of whether a reasonable officer could have believed lawful the particular conduct at issue. *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir.1991). In other words, the first step is taken analyzing the claim in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct could have violated a constitutional right? *Saucier*, 533 U.S. at 201, 121 S.Ct. at 2156 (2001). At this stage, and evaluating the facts in the light most favorable to the non-moving party, Plaintiffs, the Court finds that, *based on the facts alleged*, a constitutional right could have been violated. The Court makes clear, however, that it is not ruling either way on the merits of Plaintiffs' constitutional claim. Rather, it is simply saying that at the summary judgment stage, and viewing the evidence presented by Plaintiffs in the light most favorable to them, they have met their burden of establishing a possible constitutional violation.

Regarding the second prong, it is well settled that *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), has clearly established the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness.

However, it is at the third stage of the analysis that the Court must end. Regarding the same, the First Circuit has held that, though the "ultimate question of

whether a reasonable ... officer, on the basis of information known to him, could have believed his actions were in accord with constitutional rights is a question of law, subject to resolution by the judge not the jury ...[,] however, if there is a factual dispute, that factual dispute must be resolved by a fact finder." *Swain v. Spinney*, 117 F.3d 1, 10 (1st Cir.1997) (citations omitted). In other words, what is left to be decided is whether it "would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights", in light of the facts of the incident to be decided by the jury. *Hegarty v. Somerset Cty.*, 53 F.3d, 1367, 1380 (1st Cir.1995); *Febus–Rodríguez v. Betancourt–Lebrón*, 14 F.3d, 87, 92 (1st Cir.1994). Whether the officers acted reasonably in light of the situation before them is a question of fact only proper for a jury to decide. Because this analysis is closely tied to the Fourth Amendment claims raised by Plaintiffs, the Court cannot decide at this time whether Defendants are entitled to qualified immunity, and therefore **DENIES** their petition for summary judgment on this issue as well.

## V. CONCLUSION

In light of the aforementioned analysis, the Court therefore **GRANTS IN PART** and **DENIES IN PART** Defendants' motion for Summary Judgment. As a result thereof, it **GRANTS** Defendants' petition for summary judgment and **DISMISSES WITH PREJUDICE** the following claims: all of Plaintiffs' claims against all Defendants, in their official capacity due to Eleventh Amendment immunity; all of Plaintiffs' claims arising under the First, Fifth, Eighth, and Fourteenth Amendments; the claims for malicious prosecution; the claims for false arrest/imprisonment; the claims for supervisory liability; and all claims against co-Defendant Víctor Rivera González. It also **DENIES** Defendants'

petition for summary judgment regarding Plaintiffs' standing to bring forth the § 1983 claims and the Fourth Amendment violations and Qualified Immunity claims. This Opinion also effectively disposes of Defendants' Motion to Dismiss (docket No. 10).

**IT IS SO ORDERED.**