Alexander MONGE, Plaintiff

v.

**Angel CORTES, et al., Defendants**

**No. CIV. 04–1596(JP).**

United States District Court,
D. Puerto Rico.

Jan. 23, 2006.

Peter John Porrata, Esq., San Juan, PR, for·Plaintiff.

José Enrico Valenzuela–Alvarado, Esq., Department of Justice, Office of the Solicitor General, Ivonne Cruz–Serrano, Esq., San Juan, PR, for Defendants.

## OPINION AND ORDER

PIERAS, Senior District Judge.

## I. INTRODUCTION

The Court has before it the "Motion for Summary Judgment" (**docket No. 38**) and the memorandum of law in support thereof (**docket No. 40**) filed by co-Defendants Ángel Cortés, Gilberto Díaz, Miguel Marín, Carlos Aquino, Juan Matos, and José Luis Torres. Also before the Court is co-Defendants' "Motion for Judgment in Favor of Defendants and to Adjudicate Unopposed Motion for Summary Judgment and Memorandum of Law in Support Thereof" (docket No. 49), and Plaintiff's opposition thereto.

Plaintiff Alexander Monge brings this suit against co-Defendants Ángel Cortés, Gilberto Díaz, Miguel Marín, Carlos Aquino, Juan Matos, and José Luis Torres, all exclusively in their personal capacity, alleging that his Fourth Amendment rights were violated by co-Defendants Cortés, Díaz, Marín, and Aquino through their alleged use of excessive force during an incident which took place at the Puerto Rico Medical Center on June 26, 2003.

For the reasons stated herein, the Court hereby **GRANTS** Defendants' motion to adjudicate the motion for summary judgment as unopposed (**docket No. 49**), and **GRANTS IN PART AND DENIES IN**

**PART** Defendants' Motion for Summary Judgment (**docket No. 38**).

## II. *LEGAL STANDARD*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate where, after drawing all reasonable inferences in favor of the non-moving party, there is no genuine issue of material fact for trial. *Pagano v. Frank*, 983 F.2d 343, 347 (1st Cir.1993). A fact is material if it might affect the outcome of the case. *Mack v. Great Atl. and Pac. Tea Co., Inc.*, 871 F.2d 179, 181 (1st Cir.1989). An issue is "genuine" if sufficient evidence exists to permit a reasonable trier of fact to resolve the issue in the non-moving party's favor. *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 24 (1st Cir.1989).

The party filing a motion for summary judgment bears the initial burden of proof to show "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party to show affirmatively, through the filing of supporting affidavits or otherwise, that a genuine issue exists for trial. *See Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir.1993). In discharging this burden, the non-moving party may not rest upon mere allegations or denials of the pleadings. *See* Fed. R.Civ.P. 56(e). On issues where the non-moving party bears the ultimate burden of proof, it must present definite, competent evidence to rebut the evidence put forth by the moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–257, 106 S.Ct. 2505, 2514–2515, 91 L.Ed.2d 202 (1986). Indeed, summary judgment may be appropriate "... where elusive concepts such as motive or intent are at issue ... if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Woods v. Friction Materials, Inc.*, 30 F.3d 255, 259 (1st Cir.1994).

## III. *MATERIAL FACTS NOT IN GENUINE ISSUE OR DISPUTE*

After thoroughly evaluating the parties' stipulations in the record and the Defendants' statement of proposed uncontested facts and supporting evidence, the Court determines that the following material facts are not in genuine issue or dispute:

1. On June 26, 2003, Plaintiff Alexander Monge ("Monge") went to pick up his wife, Ivia Cruz, at the Puerto Rico Medical Center ("PRMC").

2. On the date of the events described in the Complaint, there was an Orange Alert in the United States according to the Homeland Security Advisory System.

3. The PRMC is visited by thousands of people daily and has very limited parking space in its main entrance.

4. In view of this situation, the Medical Center needs to ensure that this limited space is used only by those in need of its services, ambulances, the handicapped, and others in similar need.

5. For this reason, the PRMC has one full-time person dedicated exclusively to towing away those vehicles that prevent its patients from using or having direct access to the space in front of its main entrance.

6. As part of PRMC procedures, the vaccines stored in the warehouse of that institution were closely guarded.

7. Guarding the warehouse was the assigned responsibility at the PRMC of co-Defendant Agent José Luis Torres of the Puerto Rico Police Department ("PRPD").

8. Parking space was available in the Parking Building, which is near the area where the incident described in the Complaint took place.

9. The security guards who worked at the PRMC are employees of the Administration of Medical and Emergency Services, ("ASEM" by its Spanish acronym), the public corporation that administers medical and other professional services provided in parts of that institution.

10. These security guards provided different kinds of services within the PRMC, including the transportation of people in need of assistance, the inspection of the fire extinguishers, and the security of the buildings and property of the PRMC, including its limited parking.

11. On June 26, 2003, at or around 12:00 p.m. to 1:00 p.m., Plaintiff Monge was illegally parked in a zone which at the time was reserved for the exit of vehicles from the warehouse where the vaccines were stored.

12. Defendant Gilberto Diaz was working at PRMC on the day of the incident.

13. Defendant Ángel Cortés was working at PRMC on the day of the incident.

14. Defendant Miguel Marín was working at PRMC on the day of the incident.

15. Defendant Carlos Aquino was working at PRMC on the day of the incident.

16. Gilberto Díaz, Ángel Cortés, Miguel Marín, and Carlos Aquino, all of whom are part of ASEM's security

personnel, were not provided with firearms and, unlike police, were not authorized to arrest people.

17. Co–Defendant Ángel Cortés asked Plaintiff Monge several times to move his vehicle.

18. Plaintiff Monge refused to do so.

19. Plaintiff Monge ignored his requests and aggressively raised his window in order to avoid the guard's instructions.

20. Plaintiff was again asked by co-Defendant Ángel Cortés to move his vehicle, or else the vehicle would be towed away.

21. Plaintiff refused and called the guard "cabrón"[1] several times.

22. Co–Defendant Ángel Cortés used his radio and asked for assistance since there was a person with a negative attitude obstructing the flow of traffic in the premises and at the exit of the warehouse.

23. A second guard, co-Defendant Gilberto Díaz, arrived at the scene on a bicycle, and asked Plaintiff Monge to remove the vehicle from the area.

24. Plaintiff opened his door, came out of the car and started arguing with them, calling them bad names and swearing loudly, and telling them that they had no authority to remove him from that area.

25. Plaintiff gave them no explanation for parking in that area.

26. At this point, co-Defendant Carlos Aquino was coming out of his office, having heard the radio call.

27. Aquino was near the scene, heard the commotion and asked Plaintiff Monge to remove his car.

**1.** A derogatory, vulgar term in the Spanish language, considered insulting.

28. Monge refused, and then punched Carlos Aquino in the face.

29. At that time, another guard, co-Defendant Miguel Marín, arrived at the scene on the four-track vehicle that was used for securing the area.

30. Plaintiff acted aggressively towards the co-Defendants while they asked for protection.

31. Co–Defendant Carlos Aquino was severely beaten by Plaintiff and received emergency medical attention for severe wounds on his upper and lower lips.

32. The Defendants experienced Plaintiff's aggression and violent behavior towards them when they tried to subdue him in order to avoid any more violence and aggression.

33. The Plaintiff never fell to the floor.

34. The only blood that was shed during the incident was that of co-Defendant Carlos Aquino.

35. When a violent incident occurs in the PRMC, ASEM's guards are instructed to take the appropriate custody, secure ASEM's property, and call the Police Department for their intervention.

36. Alexander Monge was placed in custody by Gilberto Díaz, Ángel Cortés, Miguel Marín, and Carlos Aquino.

37. Defendant José Luis Torres ("Agent Torres") of the PRPD was a witness to part of the incident.

38. Alexander Monge went to the emergency room following the incident.

39. Alexander Monge was diagnosed with a lateral epicondyle fracture of his left forearm and a lateral fracture of his left elbow.

40. A police report was filed against Plaintiff Monge by the police department sometime after the accident.

41. Later, criminal charges were filed against the guards, but not against Monge.

42. Carlos Aquino was found guilty and sentenced for violating Article 95–E of Puerto Rico Penal Code in connection with the incident against the Plaintiff.

43. Gilberto Díaz was found guilty and sentenced for violating Article 95–E of the Puerto Rico Penal Code and Article 5.05 of the Weapons Law in connection with the incident against the Plaintiff.

44. Ángel Cortés was found guilty and sentenced for violating Article 95–E of Puerto Rico Penal Code in connection with the incident involving Plaintiff Monge.

45. Miguel Marín was found guilty and sentenced for violating Article 95 of Puerto Rico Penal Code and Article 5.05 of the Weapons Law in connection with the incident involving Plaintiff Monge.

46. According to Agent Torres, Plaintiff Monge was extremely aggressive and violent against all the co-Defendants while they tried to subdue him in order to avoid any more violence and aggression.

47. When the police were called in response to the incident, charges were filed against the Monge, but they were subsequently dropped.

48. Agent Torres did not touch Monge at any time during the incident.

49. Agent Torres saw the ASEM security guards try to detain Monge.

50. When Monge saw Agent Torres, he allowed his detainment by the ASEM security guards.

51. Agent Torres never saw any physical attack against Alexander Monge or his wife Ivia Cruz by the other Defendants.

52. Agent Torres did not arrest Monge.

53. For security reasons, Agent Torres prevented Monge's wife from intervening in the situation provoked by Alexander Monge.

54. Agent Torres called Sergeant René Ramírez ("Sargeant Ramírez"), badge number 8–10079, via radio communication, and requested the services of the "Cuerpo de Investigaciones Especiales" ("Special Investigations Corps").

55. Agent Torres stayed until Sergeant Ramirez and the unit patrol arrived.

56. While Agent Torres waited for Sergeant Ramirez and the unit patrol to arrive, Alexander Monge was arrested and placed into custody with handcuffs but was not physically detained by anyone. In fact, he was walking around the periphery.

57. While Agent Torres waited for Sergeant Ramirez and the unit patrol to arrive, he never saw any physical contact against Alexander Monge or her wife.

58. When Sargeant Ramírez arrived, Agent Torres explained what occurred and Ramírez told him to go back to his workplace, where the supplies of the vaccines were located.

59. Sergeant Ramírez and other police officers stayed at the scene with Monge and the ASEM security guards.

60. About an hour later, Monge's wife, Ivia Cruz, approached Agent Torres in order to obtain his badge number, which he gave her.

61. Co-defendant Juan Matos ("Matos") did not touch Alexander Monge at any time during the incident.

62. Defendant Matos was ASEM's Interim Lieutenant of Security Guards at the time of the alleged acts.

63. Defendant Matos acted in good faith at all times, following the responsibilities imposed by the Description of Duties of ASEM Security Guards.

64. Defendant Matos' duties are not those of a "law enforcement officer" because there is no "police force" in ASEM.

65. Because of Monge's aggressive manner, he was placed into custody with handcuffs in order to avoid any more violence and aggression.

66. The gasoline door of Monge's car did not suffer any damage.

67. Defendant Matos took photographs of Carlos Aquino's injuries resulting from the incident.

68. Plaintiff has been convicted in the following cases:

   (a) Case number FOP 1993 M0042 at the Court of First Instance, Carolina Section.

   (b) Case number FLA 1993 MO306 at the Court of First Instance, Carolina Section.

   (c) Case number FDC 1993 MOO64 at the Court of First Instance, Carolina Section.

69. Monge admitted that he was guilty and was convicted for simple battery assault against Alfredo Miranda in 1993.

70. Monge admitted that on or around 1987–1988, he was shot twice by thieves that intended to steal his chain because he fought them while knowing that they were armed.

71. Monge admitted that though the thieves were armed with a pistol, "nobody was going to steal [his chain] from [him]."

72. After shooting Monge, the thieves ran away without the chain, and he received surgical treatment.

73. As of today, Plaintiff Monge still has a hole in the middle of his throat and has physical problems stemming from the two bullets.

74. Monge had an accident around the year 1997, when he was thirty-three (33) years old. While crossing the street, he was hit by a car and he jumped against the hood of the car in order to try to avoid the full impact of the collision.

75. As a consequence of the impact, Monge fell unconscious on the ground. His legs and feet were injured in the accident.

76. On May 12, 2005, the Department of Justice sent letters to Defendants Gilberto Díaz, Ángel Cortés, Miguel Marín, and Carlos Aquino, notifying them that Law 9 protection benefits were not granted.

77. On February 24, 2005, the Department of Justice notified Plaintiff Monge's counsel that Defendants Gilberto Díaz, Ángel Cortés, Miguel Marín, and Carlos Aquino were denied Law 9 benefits.

## IV. *CONCLUSIONS OF LAW*

### A. **Defendants' Unopposed Motion for Summary Judgment.**

In the Court's Initial Scheduling Conference Order (**docket No. 24**), the Court granted the parties until August 8, 2005, for the filing of any dispositive motions. The Court further granted until August 29, 2005, for the filing of oppositions to any dispositive motions filed, which constitutes a span of time longer than the ten-day opposition deadline set forth in Local Rule 7(b). The Court further warned the parties of the perils of straying from Court deadlines:

Non-compliance with any Order herein may result in the imposition of sanctions on the non-complying party, attorney, or both, which may include the imposition of a fine, or the elimination of any of the allegations of the complaint, the answer, or any pleading. *The Court warns the parties that the Court SHALL NOT grant extensions of time to oppose or motions for leave to file replies. Therefore, the Court urges the parties to allot and manage their time carefully in order to comply with their obligation to the Court fully and timely.*

*ISC Order* at 12 (emphasis in original).

Defendants filed their motion for summary judgment on August 8, 2005, before the deadline specified by the Court for doing so. Plaintiff did not timely oppose the motion by August 29, 2005, nor did he request an extension of time to do so. On August 30, 2005, Defendants filed their "Motion for Judgment in Favor of Defendants and to Adjudicate Unopposed Motion for Summary Judgment and Memorandum of Law in Support Thereof" (**docket No. 49**), requesting that the Court treat their motion for summary judgment as unopposed due to Plaintiffs' failure to timely oppose it. Plaintiff opposed (**docket No. 50**) the motion to adjudicate the motion for summary judgment as unopposed on August 30, 2005, citing his heavy workload.

As the First Circuit has stated, "the fact that an attorney has other fish to fry is not an acceptable reason for disregarding a court order." *Chamorro v. Puerto Rican Cars, Inc.*, 304 F.3d 1 (1st Cir.2002). When the party bearing the responsibility of opposing a motion for summary judgment fails to do so in a timely fashion, the Court may consider the motion as unopposed and disregard a subsequently filed opposition, taking the movant's properly-supported statement of uncontested facts as true. *See Velez v. Awning Windows, Inc.*, 375 F.3d 35, 41–42 (1st Cir.2004).

Therefore, because Plaintiff failed to file a timely opposition nor a timely motion for an extension of time to do so, the Court hereby **GRANTS** Defendants' motion to adjudicate the motion for summary judgment as unopposed **(docket No. 49)**, accepting as true all of the Defendants' properly supported statements of uncontested facts.

### B. State Action Under 42 U.S.C. § 1983.

Defendants Angel Cortés, Gilberto Díaz, Miguel Marín, Carlos Aquino, and Juan Matos argue that the Court should grant summary judgment in their favor as to the Plaintiff's claims under 42 U.S.C. § 1983 because they were not acting under color of state law, but rather as private security guards for ASEM. The Court disagrees.

42 U.S.C. § 1983 provides a cause of action for "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Section 1983, however, does not provide relief against most private individuals: the deprivation must be caused by a person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." *Id.* As the "color of state law"

requirement restricts § 1983 to "state action," *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), the alleged deprivation must be "fairly attributable to the State," *Id.* at 937, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482. The state policy component requires that the deprivation "be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible." *Id.* at 940, 102 S.Ct. 2744. The state actor component requires that "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Id.* at 940–41, 102 S.Ct. 2744; 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482; *accord Casa Marie, Inc. v. Superior Court of Puerto Rico*, 988 F.2d 252, 258 (1st Cir. 1993).

A defendant may be a state actor because he is a state official, because he acted together with a state official, or because his conduct is otherwise chargeable to the State. *See Casa Marie*, 988 F.2d at 258. *See also Gonzalez–Morales v. Hernandez–Arencibia*, 221 F.3d 45, 49 (1st Cir.2000). It is well-settled that neither the Amendments to the Constitution nor Section 1983 reach purely private actions. *See Rodriguez–Garcia v. Davila*, 904 F.2d 90, 95 (1st Cir.1990).

As stated above, co-Defendants Cortés, Díaz, Marín, Aquino, and Matos argue that they were not acting under color of state law because they were acting as private security guards for ASEM, and were therefore not state actors, thus barring the application of Section 1983. This argument does not hold water. ASEM was created by statute in 1978:

as an instrumentality of the Government of the Commonwealth of Puerto Rico, attached to the Commonwealth Depart-

ment of Health, independent and separate from any other administration or body created or to be created in the future in the Department of Health and which shall be under the direction and supervision of the Secretary of Health. Said Administration shall have a separate juridical personality apart from every official thereof as well as from the Government of the Commonwealth of Puerto Rico and its agencies, instrumentalities, public corporations and political subdivisions.

24 P.R. Laws Ann. § 342b. ASEM has the powers "to sue and be sued," 24 P.R. Laws Ann. § 342 g(a); "to establish its own administrative, personnel, budgetary, purchasing and accounting structures" in consultation with the Central Personnel Administration Office, the Department of the Treasury, the Bureau of the Budget and the General Services Administration, 24 P.R. Laws Ann. § 342g(c); to borrow money, with payment guaranteed from revenues generated from its operations, "provided that the ASEM's debts and other liabilities shall not constitute debts or liabilities of the Commonwealth of Puerto Rico." 24 P.R. Laws Ann. § 342g(d); to enter into contracts, 24 P.R. Laws Ann. § 342g(e); and to issue tax-exempt bonds, 24 P.R. Laws Ann. § 342h. ASEM's funds are held in designated depositories of Commonwealth funds in separate accounts in the Administration's name, 24 P.R. Laws Ann. § 342k, but its budget is "integrated into the total budget of the Department of Health." 24 P.R. Laws Ann. § 3421. ASEM is funded in large part by Commonwealth budgetary appropriation, and budgetary shortfalls are compensated "through the mechanism of a transfer of funds from the resources of the corresponding government agencies." *Id.* The majority of ASEM's board is composed of Commonwealth government officials. 24 P.R. Laws Ann. § 342d. As this Court

has previously held, all of these factors make ASEM an arm of the state, and thus a state actor protected from suits for money damages by the Eleventh Amendment:

> [ASEM] is separately "incorporated"—it has a separate juridical personality—but it is an integral part of the Department of Health. It is not autonomous over its operations: the powers of the Administration are "vested in and exercised by" the Secretary of Health, who is an official of the executive branch of the Commonwealth government. It has the power to sue and be sued and to enter into contracts, but its property is exempt from taxation[.].

.    .    .    .    .

> Operationally the Administration is part of the Department of Health and is subject to the control of its Secretary. Given these factors, it cannot be held that [ASEM] is not an alter ego of the Commonwealth.

*Rodriguez Diaz v. Sierra Martinez,* 717 F.Supp. 27, 30–31 (D.P.R.1989) (Pieras, J.).

Co–Defendants Cortés, Díaz, Marín, Aquino, and Matos are employees of ASEM, working for security guards at the PRMC facility. ASEM was not named as defendant in this case. Though they are sued only in their personal capacities, co-Defendants Cortés, Díaz, Marín, Aquino, and Matos were, at the time of the incident giving rise to the Complaint, performing their duties as employees of ASEM, a state actor. As employees of an arm of the government, and given that the incident occurred at work during the execution of their duties as government employees, the Court concludes that the actions of co-Defendants Cortés, Díaz, Marín, Aquino, and Matos constitute state action by individuals for whom the state is responsible. Therefore, the Court hereby **DENIES** the motion by Defendants Cortés,

Díaz, Marín, Aquino, and Matos for summary judgment on the argument that there was no state action and therefore no violation of Section 1983.

## C. Self–Defense.

■ Defendants Cortés, Díaz, Marín, and Aquino further argue that the Court should grant summary judgment in their favor because they were acting in self-defense, and point repeatedly to evidence that Monge is a violent and aggressive person who acted as such on the date of the incident, and that co-Defendant Aquino was injured during the altercation. However, it is also clear from the evidence that Plaintiff Monge was severely hurt during the incident, and that Defendants Cortés, Díaz, Marín, Aquino, and Matos were convicted for assault in connection with the incident. There are plainly outstanding issues of material fact remaining, and the Court DENIES the entry on summary judgment on the grounds of self-defense.

## D. Co–Defendants Juan Matos.

Co–Defendant Juan Matos, the Interim Lieutenant of Security Guards at ASEM at the time of the events alleged in the Complaint, argues that he is entitled to summary judgment because he was not personally involved in the facts alleged in the case. The Court agrees.

■ Under 42 U.S.C. § 1983, a plaintiff must establish for each defendant that his or her own actions or omissions deprived him of protected rights. *See Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553, 562 (1st Cir.1989). A plaintiff is compelled to indicate any personal action or inaction by each defendant within the scope of their responsibility that would make each of them personally answerable in damages under Section 1983. *Id.* A supervisor "may be found liable only on the basis of her own acts or omissions."

*Figueroa v. Aponte–Roque,* 864 F.2d 947, 953 (1st Cir.1989); *see also Guzman v. City of Cranston,* 812 F.2d 24, 26 (1st Cir.1987).

The Court has no evidence before it that would indicate that Defendant Matos had anything to do with the beating of Plaintiff Monge, and nowhere does the Plaintiff specify how Matos supposedly deprived him of any protected rights through his own actions or omissions. Therefore, the Court DISMISSES WITH PREJUDICE all of Plaintiff Monge's claims against Defendant Juan Matos.

## E. Co–Defendant José Luis Torres Rivera.

■ As stated above, under 42 U.S.C. § 1983, a plaintiff must establish for each defendant that his or her own actions or omissions deprived him of protected rights. *See Gutierrez–Rodriguez,* 882 F.2d 553, 562. As with Defendant Matos, the Court has no evidence before it to the effect that Defendant Torres, the police officer who responded to a call about the incident, in any way violated Plaintiff Monge's rights by his own actions or omissions. Based upon the uncontested evidence before the Court, Officer Torres arrived at the scene of the incident after the struggle between Monge and Defendants Aquino, Díaz, Cortés, and Marín, and merely observed while the above-mentioned co-Defendants detained Plaintiff Monge prior to the arrival of Officer René Ramírez, who arrested Monge. Defendant Torres never touched nor arrested Monge, and his role in the events that transpired was merely to call for police assistance and to restrain Monge's wife from joining the altercation. There is no indication that Defendant Torres did anything but act in good faith according to his duties. Pursuant thereto, the Court hereby DISMISS-

**ES WITH PREJUDICE** all of Plaintiff Monge's claims against Defendant Torres.

### F. Qualified Immunity.

█ Finally, Defendants Aquino, Díaz, Cortés, and Marín argue that they are entitled to qualified immunity. The Court disagrees.

█ Drawing on Supreme Court precedent, the Court employs a three-part test when determining if a public official is entitled to qualified immunity. When presented with a motion for summary judgment based on qualified immunity, the Court must engage in a three part analysis: (1) the first inquiry must be whether a constitutional right would have been violated on the facts alleged; (2) the determination of whether that right was so "clearly established" as to alert a reasonable officer to its constitutional parameters; and (3) the ultimate determination of whether a reasonable officer could have believed lawful the particular conduct at issue. *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir.1991). In other words, the first step taken in analyzing the claim in the light most favorable to the party asserting the injury is to ask the question, do the facts alleged show that the officer's conduct could have violated a constitutional right? *Saucier*, 533 U.S. at 201, 121 S.Ct. at 2156 (2001).

At this stage, evaluating the facts in the light most favorable to the non-moving party, based on the facts before the Court, a constitutional right could have been violated. The Court makes clear, however, that it is not ruling either way on the merits of Plaintiff Monge's constitutional claim. Rather, it is simply saying that at the summary judgment stage, and viewing the evidence presented by Monge in the light most favorable to him, he has clearly alleged a scenario that, if true, could constitute a violation of his constitutional rights.

█ Regarding the second prong, the general proposition that the use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness has been clearly established. *See Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). However, it is at the third stage of the analysis that the Court must end. Regarding the third prong of the qualified immunity analysis, the First Circuit has held that, although the "ultimate question of whether a reasonable ... officer, on the basis of information known to him, could have believed his actions were in accord with constitutional rights is a question of law, subject to resolution by the judge not the jury ... [,] however, if there is a factual dispute, that factual dispute must be resolved by a fact finder." *Swain v. Spinney*, 117 F.3d 1, 10 (1st Cir.1997) (citations omitted). In other words, what is left to be decided is whether it "would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights," in light of the facts of the incident to be decided by the jury. *Hegarty v. Somerset Cty.*, 53 F.3d, 1367, 1380 (1st Cir.1995); *Febus–Rodriguez v. Betancourt–Lebron*, 14 F.3d 87, 92 (1st Cir.1994); *see also Gotay Sanchez v. Pereira*, 343 F.Supp.2d 65 (D.Puerto Rico 2004) (Pieras, J.).

In the matter at hand, it is clear that there are factual disputes yet to be resolved. It is uncontested that Plaintiff Monge suffered two fractures to his arm as a result of the altercation with the Defendants, and it is also uncontested that Aquino, Díaz, Cortés, and Marín were convicted of aggravated battery in Puerto Rico state court due to their part in the incident. Therefore, whether the Defendants acted reasonably in light of the situ-

ation before them is a question of fact only proper for a jury to decide. Because this analysis is closely tied to the Fourth Amendment claims raised by Plaintiff Monge, the Court cannot decide at this time whether Defendants are entitled to qualified immunity, and therefore **DE-NIES** their petition for summary judgment on this issue as well.

## V. CONCLUSION

For the aforementioned reasons, the Court hereby **GRANTS IN PART AND DENIES IN PART** Defendants' motion for summary judgment (**docket No. 38**). The Court will enter a partial judgment **DISMISSING** the claims against co-Defendants Juan Matos and José Luis Torres Rivera **WITH PREJUDICE**.

**IT IS SO ORDERED.**